The Walton & Willet Stone Block, LLC v City of Oswego Community Dev. Off. (2019 NY Slip Op 06245)





The Walton & Willet Stone Block, LLC v City of Oswego Community Dev. Off.


2019 NY Slip Op 06245


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, LINDLEY, NEMOYER, AND CURRAN, JJ.


305 CA 18-02105

[*1]THE WALTON & WILLET STONE BLOCK, LLC, FOWLER GARDELLA CONSTRUCTION, LLC, AND THOMAS J. MILLAR, PLAINTIFFS-APPELLANTS,
v
CITY OF OSWEGO COMMUNITY DEVELOPMENT OFFICE, CITY OF OSWEGO AND CAMELOT LODGE, LLC, DEFENDANTS-RESPONDENTS. 






KIRWAN LAW FIRM, P.C., SYRACUSE (TERRY J. KIRWAN, JR., OF COUNSEL), FOR PLAINTIFFS-APPELLANTS.
BOND, SCHOENECK & KING, PLLC, SYRACUSE (CLIFFORD TSAN OF COUNSEL), FOR DEFENDANT-RESPONDENT CAMELOT LODGE, LLC. 


 Appeal from an order of the Supreme Court, Oswego County (Norman W. Seiter, Jr., J.), entered April 16, 2018. The order granted the motion of defendant Camelot Lodge, LLC for leave to renew its motion to dismiss the second amended complaint against it and, upon renewal, dismissed plaintiffs' second amended complaint against defendant Camelot Lodge, LLC and dismissed the specific performance cause of action against all defendants. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs, defendant Camelot Lodge, LLC's motions are denied, the second amended complaint against defendant Camelot Lodge, LLC is reinstated and the first cause of action against the remaining defendants is reinstated.
Memorandum: Plaintiffs commenced this action seeking, inter alia, specific performance of a contract and damages for the breach of that contract. They appeal from an order that granted the motion of defendant Camelot Lodge, LLC (Camelot) for leave to renew its motion to dismiss the second amended complaint against it and, upon renewal, dismissed the second amended complaint against Camelot and dismissed the specific performance cause of action against all defendants. We reverse.
It is well settled that "[a] motion for leave to renew must be based upon new facts that were unavailable at the time of the original motion . . . and, inter alia, that would change the prior determination" (Blazynski v A. Gareleck & Sons, Inc., 48 AD3d 1168, 1170 [4th Dept 2008], lv denied 11 NY3d 825 [2008] [internal quotation marks omitted]; see CPLR 2221 [e] [2]). Further, "[a]lthough a court has discretion to grant renewal, in the interest of justice, upon facts which were known to the movant at the time the original motion was made' . . . , it may not exercise that discretion unless the movant establishes a reasonable justification for the failure to present such facts on the prior motion' " (Robinson v Consolidated Rail Corp., 8 AD3d 1080, 1080 [4th Dept 2004]; see CPLR 2221 [e] [3]). In particular, "[l]eave to renew is not warranted where the factual material adduced in connection with the subsequent motion is merely cumulative with respect to the factual material submitted in connection with the original motion" (Constructamax, Inc. v Dodge Chamberlin Luzine Weber, Assoc. Architects, LLP, 157 AD3d 852, 853 [2d Dept 2018] [internal quotation marks omitted]; see Violet Realty, Inc. v Gerster Sales & Serv., Inc. [appeal No. 2], 128 AD3d 1348, 1349-1350 [4th Dept 2015]; Skoney v Pittner, 21 AD3d 1422, 1423 [4th Dept 2005]). Here, we conclude that Supreme Court erred in granting Camelot's motion for leave to [*2]renew because the evidence it submitted in support of that motion was plainly cumulative to evidence submitted in support of the initial motion (see Constructamax, 157 AD3d at 853). Furthermore, even assuming that the allegedly new evidence was not cumulative, we conclude that Camelot's evidence adduced in support of renewal could have been, and should have been, submitted as part of its initial motion, which involved the same issue that was raised in the motion for leave to renew (see e.g. Matter of Granto v City of Niagara Falls, 148 AD3d 1694, 1696-1697 [4th Dept 2017]; Priant v New York City Tr. Auth., 142 AD3d 491, 491-492 [2d Dept 2016], lv denied 31 NY3d 1134 [2018]).
In reaching our conclusion, we note that Camelot failed to provide any "reasonable justification" for its failure to present the purportedly new facts on the original motion (CPLR 2221 [e] [3]; see Robinson, 8 AD3d at 1080). Camelot contends that it provided reasonable justification for not presenting certain facts on the initial motion because the issue to which they pertained first arose at oral argument. We reject that contention because Camelot's initial motion papers referenced the precise same issue and relevant facts as on renewal. Thus, the purportedly new facts were available to Camelot at the time of the original motion. The cases relied upon by Camelot are inapposite, inasmuch as, in those cases, there was a reasonable justification for failure to present the new facts on the initial motion because those facts were relevant to new issues that were raised in the movant's reply papers or interjected by the court during oral argument (see e.g. Matter of Lutheran Med. Ctr. v Daines, 65 AD3d 551, 553 [2d Dept 2009], lv denied 13 NY3d 712 [2009]; Olean Urban Renewal Agency v Herman, 101 AD2d 712, 713 [4th Dept 1984]). Neither scenario is applicable here, and to permit renewal under these circumstances—where the issue was already squarely presented by the initial motion—would only invite parties to attempt to cure deficiencies in their initial motion papers after those deficiencies are discovered at oral argument.
We reject our dissenting colleagues' conclusion that the court would have been "justified" in exercising discretion to treat the motion to renew as a motion to reargue, and that it effectively did so in granting Camelot's motion. We disagree. There is no justification in this case to "deem" Camelot's motion as one seeking reargument and we decline to do so because, in our view, Camelot actively foreclosed that avenue of relief. The order appealed from refers only to the motion for leave to renew because the parties stipulated to a resolution of the reargument motion. In fact, Camelot even states in its brief that its request for leave to reargue is an "issue [that] is not being appealed." Inasmuch as there is nothing in the record or briefs supporting the dissent's suggestion that the parties were pressing a case in favor of reargument, we conclude that, at best, the dissent offers an advisory opinion on the merits, on which we offer no opinion.
We therefore conclude that the circumstances of this case do not warrant granting leave to renew, nor do they warrant granting leave to reargue.
All concur except Smith, J.P., and Nemoyer, J., who dissent and vote to affirm in the following memorandum: We agree with the majority that Supreme Court erred in granting the motion of defendant Camelot Lodge, LLC (Camelot), for leave to renew its prior motion to dismiss the second amended complaint against it based on the doctrine of laches. Nevertheless, the court would have been justified in reconsidering its prior determination under the circumstances presented, and we therefore respectfully dissent and vote to affirm an order that, for all practical purposes, accomplishes that very result.
It is well settled that a motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination" (CPLR 2221 [e] [2]; see Garland v RLI Ins. Co., 79 AD3d 1576, 1576 [4th Dept 2010], lv dismissed 17 NY3d 774 [2011], 18 NY3d 877 [2012]), and we agree with the majority that Camelot failed to submit new evidence in support of its motion. Furthermore, " [a]lthough a court has discretion to grant renewal, in the interest of justice, upon facts which were known to the movant at the time the original motion was made . . . , it may not exercise that discretion unless the movant establishes a reasonable justification for the failure to present such facts on the prior motion' " (Foxworth v Jenkins, 60 AD3d 1306, 1307 [4th Dept 2009]), and we also agree with the majority that Camelot failed to establish such a justification.
Notwithstanding Camelot's failure to meet the requirements for a motion for leave to [*3]renew, however, the court possessed discretion to "deem[ ] [Camelot's] motion for renewal to be one for reargument" (Autry v Children's Hosp. of Buffalo, 270 AD2d 845, 846 [4th Dept 2000]; see Lewis v City of Rochester, 156 AD3d 1472, 1472 [4th Dept 2017]; Lahey v Lahey, 68 AD3d 1656, 1657 [4th Dept 2009]; see generally CPLR 2001), and the submissions in support of its motion justified treating Camelot's motion as such. Consequently, we would deem the order on appeal to be one granting a motion for leave to reargue, which is appealable as of right (see CPLR 5701 [a] [2] [viii]).
With respect to the merits of the court's determination, the court relied on the doctrine of laches to dismiss the second amended complaint against Camelot and the specific performance cause of action against all defendants. Under the "centuries-old common-law equitable defense of laches, [w]hen [a] lapse of time is occasioned or accompanied[] by a refusal or a failure to [interpose an equitable] claim . . . , and is so great or of such characteristics as to amount to a waiver or abandonment of the [claim], the party who comes not into court until after such delay[] will have forfeited all claim to equity' " (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 54 [1st Dept 2004], lv dismissed 3 NY3d 656 [2004], lv denied 3 NY3d 607 [2004], quoting Merchants' Bank v Thomson, 55 NY 7, 12 [1873] [emphasis omitted]). In more modern terms, the doctrine of laches provides that, "where neglect in promptly asserting a claim for relief causes prejudice to one's adversary, such neglect operates as a bar to a remedy and is a basis for asserting the defense of laches, particularly in the area of land development" (Matter of Crowell v Zoning Bd. of Appeals of the Town of Queensbury, 151 AD3d 1247, 1250 [3d Dept 2017] [internal quotation marks omitted]).
As the Court of Appeals has emphasized, "the essential element of laches [is] prejudice" (Matter of Flamenbaum, 22 NY3d 962, 966 [2013] [internal quotation marks omitted]) and, here, the prejudice to Camelot is both severe and obvious. Plaintiffs and others entered a contract with defendant City of Oswego (City) to develop a building as part of a larger redevelopment plan. The City terminated that agreement after three years of inaction on the plan, and eventually entered into a new agreement whereby Camelot would purchase the building. Certain plaintiffs then commenced an action against the City. That action was dismissed, and, on appeal, this Court affirmed the order dismissing that action (Walton & Willet Stone Block, LLC v City of Oswego Community Dev. Off. & City of Oswego, 137 AD3d 1707 [4th Dept 2016]). Plaintiffs commenced a new action, but waited approximately eight months to join Camelot as a defendant in that action. Meanwhile, Camelot invested approximately one million dollars to stabilize and secure the building, which is an important part of the heritage of the City, in order to ensure its economic utility for Camelot, the City, and the entire surrounding region. It is undisputed that Camelot undertook these efforts openly, in good faith, and in reliance upon its executed purchase agreement with the City. Moreover, given Camelot's acquisition of equitable title upon execution of its purchase agreement with the City (see Matter of City of New York, 306 NY 278, 282 [1954]), the fact that some of Camelot's emergency stabilization work occurred before it was vested with legal title is inconsequential to the equitable calculus of laches. Indeed, that emergency work was actually contemplated and required by the purchase agreement itself, which required, inter alia, that Camelot "perform repairs to stabilize and protect the building and Property at its sole expense" prior to closing as one of the conditions of the sale. Plaintiffs' failure to join Camelot in an action prior to Camelot performing the repairs on the property is precisely the type of scenario that laches was designed to prevent. Indeed, courts have invoked the doctrine of laches to bar specific performance claims where the plaintiff's delay was less protracted and the defendant's loss less pronounced than here (see e.g. Crowell, 151 AD3d at 1250; Matter of Miner v Town of Duanesburg Planning Bd., 98 AD3d 812, 814 [3d Dept 2012]; Geithman v Herman, 54 AD2d 797, 798 [3d Dept 1976]).
There are no contested factual issues surrounding the defense of laches, and plaintiffs are not entitled to a jury trial on the equitable claim against which the defense is interposed, i.e., specific performance of the original contract between the City and plaintiffs (see Allen v Berry, 43 AD3d 1418, 1418-1419 [4th Dept 2007]; Perfetto v Scime, 182 AD2d 1126, 1126 [4th Dept 1992]). Thus, under these circumstances, the court properly granted, effectively upon reargument, Camelot's motion to dismiss the second amended complaint against it and thereupon properly dismissed the cause of action for specific performance against all defendants. We therefore vote to affirm the order because it reaches that ultimate result.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court